# EXHIBIT A

E-Served: Aug 15 2024 10:06PM PDT Via Case Anywhere

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@ toddflaw.com
abacon@ toddflaw.com

Michael R. Reese (SBN 206773)
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Phone: (212) 643-0500
Fax: (212) 253-4272
mreese@reesellp.com

*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

| | |
|---|---|
| PERRY BRUNO, and VICTOR GUZMAN, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DR. SQUATCH,, LLC,<br><br>Defendant. | Case No. 22STCV36410 (lead case)<br>Case No. 23STCV23421<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>(1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq.*) and<br>(2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*)<br>(3) Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*)<br>(4) Breach of Express Warranty<br><br>**Jury Trial Demanded** |

Plaintiffs PERRY BRUNO and VICTOR GUZMAN ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1. This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*., Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq*., Consumer Legal Remedies Act (Cal. Civ. Code § 1750 et seq.), and Breach of Express Warranty resulting from the illegal actions of Defendant, in intentionally labeling its products with false and misleading claims that they are natural, when Defendant's products contain synthetic ingredients. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## JURISDICTION AND VENUE

2. This class action is brought pursuant to California Code of Civil Procedure § 382. All causes of action in the instant complaint arise under California statutes.

3. This Court has personal jurisdiction over Defendant, because Defendant does business within the State of California and County of Los Angeles.

4. Venue is proper in this Court because Defendant does business *inter alia* in the county of Los Angeles and a significant portion of the conduct giving rise to Plaintiffs' Claims happened here.

**PARTIES**

5. Plaintiff Bruno is an individual and citizen of California, who was at all relevant times residing in Los Angeles, California.

6. Plaintiff Guzman is a citizen of Los Angeles, Los Angeles County, California.

7. Defendant is a Delaware limited liability corporation whose principal place of business is located in Marina Del Rey, California.

8. At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of personal care products.

**FACTS COMMON TO ALL COUNTS**

9. Defendant manufactures, advertises, markets, sells, and distributes personal care products throughout California and the United States under brand name Dr. Squatch.

10. During the Class Period Defendant sold products labeled as natural but which actually contain the following synthetic ingredients (the "Products"), including, but not limited to, the following:

a. Men's Natural Deodorant Summer Citrus: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

b. Men's Natural Deodorant Cool Fresh Aloe: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

c. Men's Natural Deodorant pine tar: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

d. Men's Natural Deodorant Birchwood Breeze: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

e. Men's Natural Deodorant Alpine Sage: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

f. Men's Natural Deodorant Fresh Falls: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

g. Men's Natural Deodorant Wood Barrel Bourbon: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

h. Men's Natural Deodorant Bay Rum: stearyl alcohol, magnesium hydroxide, triethyl citrate, jojoba esters;

i. Men's Natural Conditioner Summer Citrus: stearyl alcohol, glyceryl stearate, hydrogenated vegetable oil, sodium stearoyl glutamate;

j. Men's Natural Conditioner Cool Fresh Aloe: stearyl alcohol, hydrogenated vegetable oil, glyceryl stearate, sodium stearoyl glutamate, potassium sorbate, sodium benzoate;

k. Men's Natural Conditioner Pine Tar: stearyl alcohol, glyceryl stearate, sodium stearoyl glutamate, hydrogenated vegetable oil, potassium sorbate, sodium benzoate, calcium gluconate;

l. Men's Natural Conditioner Cool Citrus: stearyl alcohol, glyceryl stearate, sodium stearoyl glutamate, hydrogenated vegetable oil, potassium sorbate, sodium benzoate, calcium gluconate;

m. Men's Natural Conditioner Fresh Falls: stearyl alcohol, glyceryl stearate, sodium stearoyl glutamate, hydrogenated vegetable oil, potassium sorbate, sodium benzoate, calcium gluconate;

n. Men's Natural Toothpaste Morning Formula: hydrated silica, xylitol, sodium cocoyl glutamate;

o. Men's Natural Toothpaste Night formula: hydrated silica, xylitol, sodium cocoyl glutamate, tocopherol acetate.

p. Men's Natural Shampoo Pine Tar: decyl glucoside, coco-glucoside, glycerin, sodium cocoyl glutamate, polyglyceryl-6 oleate, glyceryl caprylate, cyprylyl/capryl glucoside, sodium

stearoyl lactylate, potassium sorbate, sodium benzoate, calcium gluconate;

q. Men's Natural Shampoo Coconut castaway: decyl glucoside, coco-glucoside, glycerin, sodium cocoyl glutamate, polyglyceryl-6 oleate, glyceryl caprylate, cyprylyl/capryl glucoside, sodium stearoyl lactylate, potassium sorbate, sodium benzoate, calcium gluconate

r. Men's Natural Shampoo Cypress Coast: decyl glucoside, coco-glucoside, glycerin, sodium cocoyl glutamate, polyglyceryl-6 oleate, glyceryl caprylate, cyprylyl/capryl glucoside, sodium stearoyl lactylate, potassium sorbate, sodium benzoate, calcium gluconate

s. Men's Natural Shampoo Fresh Falls: decyl glucoside, coco-glucoside, glycerin, sodium cocoyl glutamate, polyglyceryl-6 oleate, glyceryl caprylate, cyprylyl/capryl glucoside, sodium stearoyl lactylate, potassium sorbate, sodium benzoate, calcium gluconate

t. Mens Natural Shampoo Cool Fresh Aloe: decyl glucoside, coco-glucoside, glycerin, sodium cocoyl glutamate, polyglyceryl-6 oleate, glyceryl caprylate, cyprylyl/capryl glucoside, sodium

stearoyl lactylate, potassium sorbate, sodium benzoate, calcium gluconate

u. Mens Natural Shampoo Summer Citrus: decyl glucoside, coco-glucoside, glycerin, sodium cocoyl glutamate, polyglyceryl-6 oleate, glyceryl caprylate, cyprylyl/capryl glucoside, sodium stearoyl lactylate, potassium sorbate, sodium benzoate, calcium gluconate;

11. All of the Products listed in Paragraph No. 10 above are substantially similar because all of the Products are personal care products, all of the Products contain the same natural labeling, all purchasers are damaged in the same way, and all of the Products natural labeling is false for the same reason, namely that the Products contain synthetic ingredients.

12. On October 21, 2022, Plaintiff Bruno purchased a Men's Natural Deodorant Fresh Falls Product labeled, marketed, and sold as natural, from a Ralphs located at 10900 Magnolia Blvd., North Hollywood, California.

13. Between September 2020, and present, Plaintiff Guzman purchased multiple bottles of Men's Natural Cypress Coast Shampoo from various stores in California.

14. Plaintiffs, like any reasonable consumer, understand that products labeled as natural do not contain synthetic ingredients.

15. Plaintiffs, and other reasonable consumers, understand the term “natural” based on common parlance, such that the term natural means something existing in or formed by nature.[1]

16. Plaintiffs, like any reasonable consumers, did not expect the Products they purchased would contain synthetic ingredients because the Products were labeled as “natural”.

17. Hydrogenation is a synthetic reaction that between hydrogen gas and an unsaturated double bond in a molecule under high pressure in the presence of a metal catalyst. [2]

18. The following diagram depicts the hydrogenation process: [3]




[1] Definition reflecting common parlance found at: https://www.dictionary.com/browse/natural

[2] Monoj K Gupta, Practical Guide To Vegetable Oil Processing https://www.sciencedirect.com/book/9781630670504/practical-guide-to-vegetable-oil-processing

[3] Catalytic Hydrogenation of Alkenes, https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Alkenes/Reactivity_of_Alkenes/Catalytic_Hydrogenation

19. Neutralization is a chemical reaction where an acid and a base are reacted to form water and a salt.[4]

20. Esterification is a chemical reaction which combines an organic acid and an alcohol to produce an ester and water.[5]

21. Transesterification is defined a synthetic reaction between an ester functional group and an alcohol.

22. Jojoba Esters is a complex mixture of esters produced by the transesterification/interesterification of Simmondsia Chinensis (Jojoba) Oil, Hydrogenated Jojoba Oil, or a mixture of the two. [6]

23. Xylitol is a synthetic chemical produced from the hydrogenation of xylose.

24. The hydrogenation of xylose to xylitol is depicted in the figure below:[7]

---

[4] Information available at: https://chem.libretexts.org/Bookshelves/Physical_and_Theoretical_Chemistry_Textbook_Maps/Supplemental_Modules_(Physical_and_Theoretical_Chemistry)/Acids_and_Bases/Acid_Base_Reactions/Neutralization

[5] Information available at: https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Carboxylic_Acids/Reactivity_of_Carboxylic_Acids/Fischer_Esterification

[6] Information about jojoba esters found at https://www.ewg.org/skindeep/ingredients/703268-SIMMONDSIA_CHINENSIS_JOJOBA_ESTERS/

[7] Figure 1: Hydrogenation of xylose to xylitol. Hydrogen gas and an alcohol functional group on xylitol are highlighted in red to illustrate the chemical bonds formed during the hydrogenation reaction.




25. Hydrated Silica is a synthetic chemical produced from the reaction of sodium silicate with sodium hydroxide[8] below:




26. Sodium Stearoyl Glutamate is created from a condensation reaction of glutamic acid and stearic acid followed by a neutralization reaction between the product of the condensation reaction and sodium hydroxide.

27. The chemical process for creating sodium stearoyl glutamate is depicted in the figure below:[9]

[8] Chemical reactions separating Hydrated silica from a natural product. The synthetic reactions are color coordinated to highlight the synthetic bonds formed by different chemical reactions to create the synthetic product.

[9] Figure 2: Synthesis of Sodium Stearoyl Glutamate. Stearic acid is highlighted in light blue for easier identification of the stearoyl motif throughout the chemical reaction. The navy blue indicates chemical bonds formed during the sodium hydroxide neutralization.




28. Sodium Cocoyl Glutamate is created from a condensation reaction of glutamic acid and fatty acids extracted from coconut oil followed by a neutralization reaction between the product of the condensation reaction and sodium hydroxide.

29. The reactions necessary to create Sodium Cocoyl Glutamate are depicted in the chart[10] below:




30. Tocopherol acetate is produced from the acetylation of tocopherol with acetic acid.

[10] Chemical reactions separating Sodium Cocoyl Glutamate from a natural product. The synthetic reactions are color coordinated to highlight the synthetic bonds formed by different chemical reactions to create the synthetic product.

31. The acetylation reaction used to create tocopherol acetate is depicted in the figure below:[11]




32. Stearyl Alcohol is synthesized by the hydrogenation of stearic acid.

33. The hydrogenation reaction used to synthesize stearic acid is depicted in the figure below:[12]




34. Hydrogenated vegetable oil is synthesized from the hydrogenation of various vegetable oils as depicted in Paragraph 15 above.

35. Glyceryl Stearate is produced by the synthetic reaction of glycerol and stearic acid.

[11] Figure 3: Synthesis of Tocopherol acetate. Acetic acid and the acetyl functional group on tocopherol acetate are highlighted in pink to show the chemical bonds formed during the acetylation reaction.

[12] Figure 4: Hydrogenation of stearic acid to stearyl alcohol. Hydrogen gas and an alcohol functional group on stearyl alcohol are highlighted in red to illustrate the chemical bonds formed during the hydrogenation reaction.

36. The reaction of glycerol and stearic acid used to synthesize glyceryl stearate is depicted in the figure below[13]:




37. Potassium Sorbate is produced from the neutralization of sorbic acid with potassium hydroxide.

38. The neutralization reaction used to produce potassium sorbate is depicted in the figure below:[14]




39. Sodium benzoate is produced by the neutralization of sodium hydroxide with benzoic acid.

[13] Figure 5: Synthesis of glycerol stearate. Stearic acid is highlighted in light blue for easier identification of the stearoyl motif through the chemical reaction. The navy blue indicates chemical bonds formed during the sodium hydroxide neutralization.
[14] Figure 6: Synthesis of potassium sorbate. The navy blue indicates chemical bonds formed during the potassium hydroxide neutralization

40. The neutralization reaction used to produce sodium benzoate is depicted in the figure below:[15]




41. Calcium Gluconate is produced from the neutralization reaction of gluconic acid with lime or calcium carbonate.

42. The neutralization reaction used to produce calcium gluconate is depicted in the figure below:[16]




43. Triethyl citrate is created from the treatment of citric acid with acetic anhydride or acetyl chloride forming a cyclic anhydride, which is then reacted with ethanol.

---

[15] Figure 7: Synthesis of sodium benzoate. The navy blue indicates chemical bonds formed during the sodium hydroxide neutralization

[16] Figure 8: Synthesis of calcium gluconate. The navy blue indicates chemical bonds formed during the calcium carbonate neutralization

44. The process of chemical reactions used to create triethyl citrate is depicted in the figure below:[17]




45. Magnesium Hydroxide is created from a reaction of magnesium chloride or magnesium sulfate and sodium hydroxide.

46. The reaction used to create magnesium hydroxide is depicted in the figure[18] below:




47. Decyl glucoside is not natural because it is made by chemical condensation with glucose polymers.

---

[17] Figure 9 Synthesis of triethyl citrate. Ethanol is highlighted in light blue for easier identification of the ethyl motif through the chemical reaction. As well as highlighting the bonds formed form the alcoholysis reaction.

[18] Figure 10: Synthesis of magnesium hydroxide. Sodium hydroxide is highligthed in blue to show the formation of new chemical bonds in magnesium hydroxide.

48. Coco-glucoside is a synthetic ingredient obtained by the condensation of glucose and coconut alcohol with acid catalysts at high temperatures.

49. Glycerin is recognized as synthetic and is a factory-produced texturizer created by complex processing. 7 C.F.R. § 205.605(b).

50. Sodium stearoyl lactylate is a mixture of sodium salts of stearoyl lactylic acids and sodium salts of related acids.

51. It is manufactured by the reaction of stearic acid and lactic acid and conversion to sodium salts.

52. Caprylyl/capryl glucoside is produced by the reaction of glucose from corn with the fatty alcohol capric alcohol.

53. Polyglyceryl-6 oleate is produced through saponification and polymerization.

54. Glyceryl caprylate is produced through esterification, involving caprylic acid and glycerin.

55. Persons, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading labels with regards to the contents of the Products.

56. By making false and misleading claims about the Products, Defendant impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

57. Therefore, Plaintiffs have been deprived of their legally-protected interest to obtain true and accurate information about their consumer products as required by law.

58. As a result of Defendant's fraudulent labeling, Plaintiffs have been misled into purchasing products that did not provide them with the benefit of the bargain they paid money for, namely that the Products would be natural.

59. The following are examples of the Products' fraudulent labeling:



















MEN'S NATURAL DEODORANT
COOL FRESH ALOE
MEN'S NATURAL DEODORANT
PINE TAR
MEN'S NATURAL DEODORANT
BIRCHWOOD BREEZE
MEN'S NATURAL DEODORANT
ALPINE SAGE
MEN'S NATURAL DEODORANT
FRESH FALLS
MEN'S NATURAL DEODORANT
WOOD BARREL BOURBON
MEN'S NATURAL DEODORANT
BAY RUM
MORNING FORMULA
CITRUS MINT
NIGHT FORMULA
SPEARMINT
MEN'S NATURAL SHAMPOO
FRESH FALLS
MEN'S NATURAL SHAMPOO
CYPRESS COAST
MEN'S NATURAL SHAMPOO
PINE TAR
MEN'S NATURAL SHAMPOO
COOL FRESH ALOE







60. As a result of Defendant's fraudulent labeling, Plaintiffs and the Class paid a price premium for a premium natural Product, but instead received non-premium Products with synthetic ingredients.

61. As a result of the false and misleading representations, the Products are sold at a premium price, approximately not less than $10-$14 per 8 oz, excluding tax and sales, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

62. Plaintiffs and the Class purchased Defendant's Products because Defendant's advertising claimed that the Products were natural.

63. Due to Defendant's intentional, deceitful practice of falsely labeling the Products as natural when they are not, Plaintiffs did not know that the Product was not natural when he purchased it.

64. Plaintiffs were unaware that the Products contained synthetic ingredients when they purchased them.

65. Worse than the lost money, Plaintiffs, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they ingest.

66. Defendant, and not Plaintiffs or the Class or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as natural was false, deceptive, and misleading, and that Plaintiffs, the Class, and Sub-Class members would not be able to tell the Products they purchased were not natural unless Defendant expressly told them.

67. As a result of Defendants' acts and omissions outlined above, Plaintiffs has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

a. Lost money;

b. Wasting Plaintiff/s' time; and

c. Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product packaging.

## **CLASS ALLEGATIONS**

68. Plaintiffs brings this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the initial filing of the Complaint through the date of class certification.

69. Plaintiffs also brings this action on behalf of themselves and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within California who purchased the Products within four years prior to the initial filing of this Complaint through to the date of class certification.

70. Defendant, its employees and agents are excluded from the Class. Plaintiffs do not know the number of members in the Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

71. The Class is so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believes and thereon alleges that the Class include thousands, if not millions of members. Plaintiffs allege that the class members may be ascertained by the records maintained by Defendant.

72. This suit is properly maintainable as a class action because the Class and Sub-class are so numerous that joinder of their members is impractical and the

disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

73. There are questions of law and fact common to the Class affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

a. Whether the Defendant intentionally, negligently, or recklessly disseminated false and misleading information by labeling the Products as natural;

b. Whether the Class members were informed that the Products were not natural;

c. Whether the Products contain synthetic ingredients;

d. Whether Defendant's conduct was unfair and deceptive;

e. Whether there should be a tolling of the statute of limitations; and

f. Whether the Class is entitled to restitution, actual damages, punitive damages, and attorney fees and costs.

74. As a resident of the United States and State of California who purchased the Products, Plaintiffs are asserting claims that are typical of the Class and Sub-Class.

75. Plaintiffs have no interests adverse or antagonistic to the interests of the other members of the Class or Sub-Class.

76. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Subclass. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

77. A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

78. The prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to them that would, as a practical

matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

79. Plaintiffs' claims and injuries are identical to the claims and injuries of all class members, because all claims and injuries of all class members are based on the same fraudulent labeling and same legal theory. All allegations arise from the identical, false, and misleading packaging used by Defendants.

80. Defendants have acted or refused to act in respect generally applicable to the Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

81. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

**FIRST CAUSE OF ACTION**
**Violation of the California False Advertising Act**
**(Cal. Bus. & Prof. Code §§ 17500 *et seq.*)**

82. Plaintiffs incorporates by reference each allegation set forth above in Paragraphs 1-81 as if fully articulated herein.

83. Pursuant to California Business and Professions Code section 17500, *et seq*., it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to

sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

84. Defendant misled consumers by making misrepresentations about the Class Products, namely, Defendant sold the Products that were fraudulently labeled, and made false representations to Plaintiffs and other putative class members in order to solicit these transactions.

85. Specifically, Defendant sold Products labeled as natural but which actually contain synthetic ingredients.

86. Defendant knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiffs and other Class Members.

87. As a direct and proximate result of Defendant's misrepresentations, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property. Plaintiffs reasonably relied upon Defendant's representations regarding the Products, namely that the Products were natural. In reasonable reliance on Defendant's misrepresentations, Plaintiffs and other Class Members purchased the Products. In turn Plaintiffs and other Class Members ended up with products that turned out to actually be different than advertised, and therefore Plaintiffs and other Class Members have suffered injury in fact.

88. Plaintiffs allege that these false and misleading representations made by Defendant constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

89. Defendant knew that the Class Products did in fact contain synthetic ingredients.

90. Thus, Defendant knowingly sold Class Products to Plaintiffs and other putative class members that contained false and misleading statements.

91. The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class Members in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiffs is entitled to preliminary and permanent injunctive relief ordering Defendant to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Class Members Defendant's revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of Unfair Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**

92. Plaintiffs incorporate by reference each allegation set forth above in paragraphs 1-81 as if fully articulated here in.

93. Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection between a defendant's business practices and the alleged harm--that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

**UNFAIR**

94. California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendant's acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Plaintiffs reserve the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

95. In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing benefits to consumers or competition; and, (3) is not one that consumers themselves could reasonably have avoided.

96. Here, Defendant's conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class. Plaintiffs and members of the Class have suffered injury in fact due to Defendant's decision to sell them fraudulently labeled products (Class Products). Thus, Defendant's conduct has caused substantial injury to Plaintiffs and the Class.

97. Moreover, Defendant's conduct as alleged herein solely benefits Defendant while providing no benefit of any kind to any consumer. Such deception utilized by Defendant convinced Plaintiffs and members of the Class that the Products would be natural, in order to induce them to spend money on said Class Products. In fact, knowing that Class Products, by their objective terms were not

natural, unfairly profited from their sale, in that Defendant knew that the expected benefit that Plaintiffs would receive from this feature is nonexistent, when this is typically never the case. Thus, the injury suffered by Plaintiffs and the members of the Class is not outweighed by any countervailing benefits to consumers.

98. Finally, the injury suffered by Plaintiffs and members of the Class are not an injury that these consumers could reasonably have avoided. After Defendant, falsely represented the qualities of Class Products consumers would receive, the Plaintiffs and Class Members suffered injury in fact due to Defendant's sale of Class Products to them. Defendant failed to take reasonable steps to inform Plaintiffs and class members that the Class Products contained synthetic ingredients, including intentionally mislabeling the Products as natural. As such, Defendant took advantage of Defendant's position of perceived power in order to deceive Plaintiffs and the Class members to purchase products containing fraudulent labels. Therefore, the injury suffered by Plaintiffs and members of the Class is not an injury which these consumers could reasonably have avoided.

99. Thus, Defendant's conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

**FRAUDULENT**

100. California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

101. The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

102. Here, not only were Plaintiffs and the Class members likely to be deceived, but these consumers were actually deceived by Defendant. Such deception is evidenced by the fact that Plaintiffs agreed to purchase Class Products under the basic assumption that they were natural. Plaintiffs' reliance upon Defendant's deceptive statements is reasonable due to the unequal bargaining powers of Defendant and Plaintiffs. For the same reason, it is likely that Defendant's fraudulent business practice would deceive other members of the public.

103. As explained above, Defendant deceived Plaintiffs and other Class Members by fraudulently labeling the Class Products.

104. Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

**UNLAWFUL**

105. California Business and Professions Code Section 17200, et seq. prohibits "any unlawful…business act or practice."

106. As explained above, Defendant deceived Plaintiffs and other Class Members by labeling the Products as "natural", when in fact the Products contain synthetic ingredients.

107. Defendant used false advertising, marketing, and misrepresentations to induce Plaintiffs and Class and Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code Section 17500, et seq.

108. Had Defendant not falsely advertised, marketed or misrepresented the Class Products, Plaintiffs and Class Members would not have purchased the Class Products. Defendant's conduct therefore caused and continues to cause economic harm to Plaintiffs and Class Members. These representations by Defendant are

therefore an "unlawful" business practice or act under Business and Professions Code Section 17200 *et seq*

109. Defendant has thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendant, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code section 17203, Plaintiff and Class Members seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to correct its actions.

## COUNT III
## VIOLATIONS OF CONSUMER LEGAL REMEDIES ACT
## (Cal. Bus. & Prof. Code §§ 1750 *et seq*.)
## On behalf of the Class and Sub-Class

110. Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

111. Defendants' actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770, to the extent that Defendants violated the following provisions of the CLRA:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Cal. Civ. Code § 1770(5);

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model,

if they are of another; Cal. Civ. Code § 1770(7);

c. Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);

d. Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and

e. Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

112. On or about November 16, 2022, through his Counsel of record, using certified mail with a return receipt requested, Plaintiff Bruno served Defendant with notice of their violations of the CLRA, and asked that Defendant correct, repair, replace, or otherwise rectify the goods and services alleged to be in violation of the CLRA; this correspondence advised Defendant that it must take such action within thirty (30) calendar days, and pointed Defendant to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendant. Defendant has not replied to this notice letter with a letter dated on or before November 16, 2022, and thus refused to adequately correct, repair, replace, or otherwise rectify the issues raised therein.

## COUNT IV
## Breach of Express Warranty

113. Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein

114. The Products were manufactured, identified, marketed and sold by Defendant and expressly warranted to Plaintiffs that they were natural, and contained natural ingredients even though it consisted of mostly non-natural, synthetic ingredients.

115. Defendant directly marketed the Products to Plaintiffs and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising

116. Defendant knew the Products' attributes that potential customers like Plaintiffs were seeking, cosmetics that were natural and contained natural ingredients and developed its marketing and labeling to directly meet those needs and desires

117. Defendant's representations about the Products were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was natural, and contained natural ingredients even though they consisted of mostly non-natural, synthetic ingredients

118. Defendant affirmed and promised that the Products were natural and contained natural ingredients even though they consisted of mostly non-natural, synthetic ingredients

119. Defendant described the Products so Plaintiffs and consumers believed it was natural and contained natural ingredients even though it consisted of mostly non-natural, synthetic ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises

120. Plaintiffs recently became aware of Defendant's breach of the Products' warranties

121. Plaintiffs provided or provides notice to Defendant, its agents,

representatives, retailers, and their employees that it breached the Product's warranties

122. Defendant received notice and should have been aware of these issues due to complaints by third parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums

123. The Products did not conform to Defendant's affirmations of fact and promises due to Defendant's actions

**MISCELLANEOUS**

124. Plaintiffs and Class Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

**REQUEST FOR JURY TRIAL**

125. Plaintiffs request a trial by jury as to all claims so triable.

**PRAYER FOR RELIEF**

126. Plaintiffs, on behalf of themselves and the Class, requests the following relief:

(a) An order certifying the Class and appointing Plaintiffs as Representatives of the Class;

(a) An order certifying the undersigned counsel as Class Counsel;

(b) An order requiring Defendant, at its own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

(c) An order requiring Defendant to engage in corrective advertising regarding the conduct discussed above;

(d) Actual damages suffered by Plaintiffs and Class Members as applicable or full restitution of all funds acquired from Plaintiffs

and Class Members from the sale of misbranded Class Products during the relevant class period;

(e) Punitive damages, as allowable, in an amount determined by the Court or jury;

(f) Any and all statutory enhanced damages;

(g) All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

(h) Pre- and post-judgment interest; and

(i) All other relief, general or special, legal and equitable, to which Plaintiffs and Class Members may be justly entitled as deemed by the Court.

Dated: August 15, 2024

Respectfully submitted,

LAW OFFICES OF TODD M. FRIEDMAN , PC

By:____________________

TODD M. FRIEDMAN, ESQ.
Attorney for Plaintiff Bruno

REESE LLP

By:____________________

MICHAEL R. REESE, ESQ.
Attorney for Plaintiff Guzman